I'm Ron Elberger, counsel for Jared Fogle, who appeals from his 188-month above-guideline sentence, challenging on the basis that it's procedurally flawed, that it's based upon certain erroneous facts, as well as being substantively unreasonable. The sentence, we believe and contend, was erroneously based upon acts that Fogle did not do and were also Fogle's, quote, fantasies, end quote. Second, a mistaken belief by the district court that Fogle was involved in the actual production of the child pornography, aggravated by the fact that the district court failed to explain in its decision whether or not and the extent to which Fogle was subject to that disdain that the child pornography production carries with it. And then third, the court's erroneous view that Fogle collected and viewed child pornography on the internet of children as young as six years of age. With regard to the first point, the court determined that the guideline range did not Explaining, and I quote at page 178 of the transcript of the sentencing hearing, this defendant is obsessed with child pornography and having sex with minors. He fantasized about it in telephone conversations. He frequently expressed his desire to have sexual relations with children. He acted upon it when he sought out and traveled to have sex with minors, the last sentence being the basis for his guilty plea and conviction on count two, which was the interstate travel for the purpose of having illicit sex with a minor, which occurred in Manhattan on several occasions. The erroneous part of this is multiple facets. First, we know, and the government has not contended, that Mr. Fogle did not distribute any child pornography on the internet, nor is there any evidence that he ever collected any child pornography on the internet or went on the internet for that purpose. Second, with regard to photos or videos of Taylor's victims, the government agreed that at least four of the first 12 victims were not known to Fogle, and minor victim one was also unknown, in addition to which Fogle did not see all of the photos and images and videos that Taylor produced. It just did not happen. Now did he ask minor victims 13 and 14, the advertising prostitute minors in New York City, as to whether or not they could arrange for Fogle to participate in commercial sex acts with children as young as 14 years of age? The answer is yes, on multiple occasions, and it decidedly was regarded to many others throughout the United States. But as the Second Circuit held in the United States v. Valley, the mere fact that someone is fantasizing about a crime or committing a crime, even a crime of violence against a real person, whom that person knows, is not itself a crime, nor is it a basis to provide aggravation for a sentence, remembering that the initial guideline range, which was correctly calculated as being between 135 and 168 months, by agreement with the U.S. Attorney, was agreed in the plea agreement to be between, I believe, 60 months and 168 months. And the government agreed to recommend up to 151 months as being the top, and Fogle agreed to have 60 months as the bottom. And the court, of course, had discretion to increase it and assert anything that could be justified. The court's disdain and disapproval, though, was indicated by its language, quote, the level of perversion and lawlessness exhibited by Mr. Fogle was extreme, end quote, when she was referring to his discussions with adult prostitutes with whom he had sex, and pages 186 through 187 of the transcript of the hearing. However, even though he talked about it, that's all he did. It was all talk and no substance, because with regard to those conversations, there was no evidence that Mr. Fogle was a criminal or unlawful in any of those sentencing guidelines. That does not apply to these statements and conversations Mr. Fogle had. Second, we point out that with regard to the second contention, with regard to the production, during the sentencing hearing, the court continually asked questions such as, what about when there's a conspiracy with the producer? Counsel at trial, or at the sentencing hearing, stated, it's not a conspiracy to produce. There is no suggestion by the government that Fogle had any active role in the production, end quote. And that fact was agreed to by the government below. And Fogle wasn't charged with production at all. Had he engaged in it, then he would have been charged, yet the district court went on a Thank you. To address which specific point, I have reserved two minutes. Thank you, Mr. Elenbarger. Mr. Ellenbarger? Still here. Oh, excuse me. Mr. Ellenbarger was arguing. Mr. DeBroda is speaking now. Yes, thank you, Your Honor. May it please the court, Mr. Ellenbarger. My name is Stephen DeBroda, and I handled the case for the government below and on appeal. I'm going to focus my remarks in two ways. One is what the district court actually said to justify her sentence. And then we'll address the various points that have been raised as potential errors, despite that sort of overall veneer of what we have here. Our position, straightforwardly, is to justify what amounts to a one-level upward variance this court went far beyond what, based on this court's prior cases, what the district court would have needed to do. Judge Pratt knew what her responsibilities were to justify an upper variance, and more than met that by talking about the various ways in which the Fogle case was more aggravated than other cases. Turning first to the point of nature and circumstances of the offense, she found that both the child pornography crime and the child sex trafficking crime were both more aggravated than normal. With regard to the child pornography crime, she correctly pointed out that Mr. Fogle knew some of the victims in this child pornography, knew the producer of the child pornography, that's Taylor, and had conspired with Taylor to receive, distribute that material so that Mr. Fogle could get it, have access to it, and use it to fuel his sexual fantasies on multiple occasions over a four-year period of time. You say he knew some of these victims, young children? Yes. And what was the occasion of his personal encounter? Okay, so Mr. Taylor is an employee of Mr. Fogle and close friend. Mr. Taylor ran the foundation that Jared Fogle put up, basically. They would travel together frequently. Some of the victims, without identifying them more specifically, are related to Mr. Taylor and had socialized with Mr. Fogle. But beyond that, Mr. Fogle also had dinner, at least, with some of the victims he was not related to while the production was going on. In fact, within 24 hours of one of the times the material was produced, the victim was sitting at a dinner table with Mr. Fogle. So he had socialized with some of these victims and knew them in the real world. How old were they? They vary in age. The youngest of the production victims is nine, and that victim was related to Mr. Taylor when he stayed at that way. But that's not one of the victims, to be fair, that Mr. Fogle saw the material. He saw the material involving victims 13 to roughly 16. The same ones that he encountered later? Some of the same ones, yes. All of this activity in the production is occurring at the two residences of Mr. Taylor. And this is basically children who would be there because of family associations, let me say, or visiting the kids that were there. Those are some of the same kids that Mr. Fogle knew were associated with Mr. He knows Taylor for a long period of time, knew Taylor's family, and so forth. Does that answer your question well enough without more detail? If the court needs further elaboration on that, we could give court under seal precisely who those victims are. But the court was aware of who they were, had received victim impact statements from some of them. And there's really no question that Mr. Fogle, therefore, knew the victims in the homemade child pornography by name, knew where they lived, knew who was producing the material. He also knew who minor victim one was, and he knew about the production of minor victim one, and had he reported that, minor victims two through 12 never would have been victimized. That's a specific fact that's in the record, and one of the things that was aggravated about the child pornography crime that the court made specific reference to. Is there a crime for failure to report in a situation like that? It would be a crime to failure report, child abuse under Indiana law, yes. More so if you're in a conspiracy to receive the material from the producer. But the court's point was more, it is more harmful than a normal child pornography case to have that close an association, both to what's happening to the victims, their additional victimization, as well as having to overcome the impulse control of deciding whether to get material where you know who that kid is, you know they're going to be continually victimized, you know what's going to happen when they come home. That's the kind of material Mr. Fogle was fueling his fantasies with. That's more aggravated than someone who's getting material from kids that are anonymous to them on the internet. And that's the point the court was making, and it's the point the government made. We argued that zero-day receipt of material from the producer is a more aggravated circumstance and more blameworthy than receiving material where you don't have that information. And that's one of the reasons that the court said the crime was more aggravated, but there was more. She said it was a long period of criminal activity, the victims were as young as six, and that's a fact, there was great harm to the victims, the amount of material was over 100 videos, each of those under sentencing law counts as 75 each. He was acting on a sexual attraction to the minors, he knew the victims in the production, he socialized with them, and it was distinguishable from other Southern District cases. Now with regard to the production of child pornography point, there's no question about any confusion in that courtroom about production. If there had been production of child pornography justifying the court's decision as part of the relevant conduct of the offense, there would have been a cross-reference in the guidelines to the production guideline which starts at a base offense level 32. That cross-reference is found in 2G2.2, the child pornography guideline the court used. It goes to 2G2.1, the court didn't do that. The court knows how to do that, the court had done other production cases, of course. That wasn't used either by the parties, in the pre-sentence, or at any point in the discussions. That would be what the relevant conduct question is. Where production comes into it is under 3553 factors. So it's not a relevant conduct question, it's nature and circumstances of the offense. And the court was making the point, as I just said, that there are 9 or 10 reasons why this trafficking of material between Fogle and Taylor is more significant, more blameworthy than other cases that would result in a lower regular guideline analysis without a variance. Now that's the side of the case that's the child pornography side. With regard to the sex trafficking side, the court also found a bunch of reasons why those crimes were aggravated as well. He had sexual contact with victim 13 on 5 occasions while she was still a minor, and he asked her to provide access to other prostituted minors. That's trying to get one minor to get access to other minors. The court had in the record from the hearing the terrible lives of minor victims 13 and 14. At one point they worked for a violent pimp. The customer driving that financial analysis that's driving that activity was Mr. Fogle, in part, along with other people. So there were also two victims in count two, not one. And that multiple victim situation, multiple events, were part of the reason why that was more aggravated. Even further, he asked a bunch of different adult prostitutes he'd already had actions with to provide him with more underage partners in transcripts that were read during the hearing of the chat logs between Fogle and those people. None of that was fantasy, that was solicitation. Despite all that, there was only one other category of information, and that's his communication with non-adult, non-prostitute adult women on a few occasions he met around the country and was in relationships with. He talked to them at times about his sexual fantasies focusing on boys and girls as young as nine. He describes that as fantasies. If you look in the testimony of his expert, Dr. Bradford, there was a lot of discussion of, is it significant to the diagnosis of someone as a pedophile that they have sexual fantasies involving preteen or prepubescent minors? Because that guy was diagnosing him as a mild or a weak pedophile. I cross-examined that and suggested there was no such categorization. Our point was simple on the government side. If you have a long-standing and persistent pattern of behavior that includes collection of child pornography, seeking out prostituted underage minors for sex, actually having sex with them, all of that occurring essentially with regard to the prostitution, a seven-year period of time. If you have all of that, you are more dangerous than an offender that doesn't have those characteristics. That's a history and character analysis. Part of his history and part of his character is the fact that he is fueling his fantasies with not just people involved in the criminal realm, but people who are not. That commitment to that supported the judge's conclusion, which is the one she made on history and character, that he was obsessed with having sex with minors and he lacked personal characteristics to control his behavior, therefore he was more dangerous. He went to great lengths to have sex with prostituted minors. He traveled all over the United States in seeking this out. If you look at the exhibits we read from the times he's approaching other people to get access to minors for actual sex now, those are in multiple states. I talked about he had multiple contacts with prostituted minors. And what he has done in fostering years of abuse and repeatedly talking about this attraction, makes him more dangerous and makes him more justifiable for an aggravated sentence under the first part of the analysis of the variance. That's nature and circumstance of the offense. When you get to history and character, the defense doesn't see it the same way that the court did. And the government believes. He had a great family. He had fame. He had success. He had a life free from abuse and neglect. He had no traditional risk factors. He threw all of that away when he committed a wide range of criminal conduct over many years. That makes him more blameworthy, not less. The specific argument that they made at one point in the brief and in court was, he'll suffer more in prison because he's famous. The court rejected that and said, it had been the tradition in this country to give rich people and poor people the same sentence. The fact that you're rich doesn't get you a discount because you may be subject to more prison victimization or more shame or all of those effects. Did he pay restitution? He paid a lot, yes, your honor. We made him pay $100,000 in restitution to each of the 14 victims. And he had to do that up front. Some of the victims were in desperate need of immediate help, particularly the two minors who were recovering from the human trafficking component of this. They were basically destitute. So we made him pay that up front. There's no limitation on those victims' ability to seek additional amounts, too. What we tried to do is treat them the same and make sure that that money was out there so they could start with rehabilitation, treatment, and so forth. When you put all that together, what this judge did was fully understand what the obligations were under the law to justify a one-level upward variance. And she gave those rationales in a way that is not error. Thank you, your honor. Thank you, Mr. DeBorda. Mr. Hilberger? With regard to the six-year-old, we would say and remind the court that this was one of what's called the commercial internet source that was provided by Mr. Taylor to Mr. Fogle but wasn't solicited, wasn't requested. He didn't know it was coming. And there's no evidence to the contrary. It happened to be on a flash drive that Mr. Fogle received. We'd also note that with regard to the distribution aspect of count one, the distribution was one isolated incident that occurred when Mr. Fogle was with his then-girlfriend. And they viewed some of the material on the flash drive in the confines of a private hotel room, after which he disposed of the flash drive by throwing it away. Under the Bradley decision decided by this circuit in 2012, one of the principles stated was, when reviewing above-guideline sentence, the court determines whether the district court offered justification sufficiently compelling to support the degree of variance. A major departure should be supported by more significant justification than a minor one. I would add that in that realm, to the individual, the deprivation of each day can actually be an eternity. Thank you. Thank you, Mr. Ilver, and thank you, Mr. DeBolt. The case will be taken under advisement, and the court will stand in recess.